UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NEKISHA SHELTON                                    CIVIL ACTION

VERSUS                                             NO: 2:24-cv-1348

UNIVERSITY HEALTHCARE                              SECTION: T (1)
SYSTEM, L.C.

### ORDER AND REASONS

Before the Court is Defendant's University Health Care System, L.C.'s ("EJGH" or "Defendant") Motion to Dismiss Plaintiff's, Nekisha Shelton, First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). R. Doc. 45. For the following reasons, the Motion is **GRANTED IN PART AND DENIED IN PART**.

### BACKGROUND[1]

This is an employment discrimination case. *See* R. Doc. 42. Plaintiff is an African American female formerly employed by Defendant as a Per Diem Nursing employee ("PRN"). *Id.* at ¶ 10. She was hired on or about August 29, 2022. *Id.* Plaintiff maintains that she specifically was assigned a "disproportionately heavy workload" for two days in December 2022. *Id.* at ¶¶ 20-26. She claims these assignments are racially discriminatory. *See generally id.* Plaintiff first alleges that on December 16, 2022, Plaintiff, along with the two other African American nurses out of a total of six nurses, handled 78% of the procedures. *Id.* at ¶ 21.

Most central to Plaintiff's claims are allegations and conduct that occurred on December

---

[1] The Court accepts all well-pled factual allegations of the complaint as true and views them in the light most favorable to the plaintiff. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

30, 2022 ("the December 30 Incident"). Plaintiff was initially assigned 15.5 procedures—a workload she claims to be excessive without help from other PRNs. *Id.* at ¶ 23. However, Plaintiff concedes that Respiratory Manager Blanca Ramos advised her that a full load for a twelve-hour shift is 15 procedures. *Id.* at ¶ 24. Later in the day, Plaintiff was assigned to work 3 floors and 3 additional sections. *Id.* at ¶ 28. During this 12-hour shift, Plaintiff was asked to complete 27.5 procedures. *Id.* Plaintiff refused to complete these extra assignments and wrote on the assignment sheets "Not Doing" ("the 'not doing!' messages"). *Id.* at ¶ 35. Plaintiff's supervisor, Jill Wentzel,[2] called Plaintiff and ordered her to go home because she would not complete the tasks. *Id.* at ¶ 36. Plaintiff initially did not follow the order and claimed that Wentzel lacked the authority to send her or other PRNs home. *Id.* Wentzel later called security on Plaintiff and re-articulated to her the directive to go home or be escorted out. *Id.* at ¶¶ 39-40. Plaintiff then claims she complained to House Supervisor Addison that unlike the other Caucasian PRNs, she had an "unreasonable workload" and was not receiving assistance on her work projects. *Id.* at ¶¶ 40-43. Plaintiff maintains she eventually complied with the order to leave but was escorted off the premises by security. *Id.* at ¶ 45.

The next day, Plaintiff requested to return to work and began to send multiple internal grievance emails to EJGH coworkers detailing her objections to Defendant's actions. *Id.* at ¶ 47. She was also placed on investigative leave. *Id.* In a January 4, 2023, meeting with EJGH's Human

---

[2] Plaintiff interchangeably refers to "Jill Wentzel" and a "Jille Wentzel" throughout the FAC and motions. *See generally* R. Doc. 42, 43 *see also* R. Doc. 45-5 ("Jill" is the proper spelling as identified in her email address). The Court notes that either reference to a "Jill Wentzel" or "Jillie Wentzel" is the same person.

Resources head, Nicole Yeatmean, Manager Ramos, and Director Mitch Brock, Plaintiff was terminated. *Id.* at ¶ 51. Director Brock informed Plaintiff she was being terminated due to insubordination and refusal to complete assigned tasks. *Id.* Yeatman also informed her that the decision to terminate her was made before the meeting and was based in part on collected witness statements about her behavior during the December 30 Incident. *Id.* at ¶ 52.

Plaintiff subsequently filed this Title VII 42 U.S.C. § 2000e *et seq,* and 42 U.S.C. § 1981 action on May 5, 2024. R. Doc. 1. Defendant moved to dismiss the initial complaint under Rule 12(b)(6). R. Doc. 7. Plaintiff later sought leave to withdraw the complaint and file a First Amended Complaint ("FAC")—to add thirty pages to clarify the factual basis. R. Doc. 36. The Magistrate Judge granted Plaintiff's motion. R. Doc. 41.

The FAC alleges hostile work environment, racial discrimination, retaliation, and constructive discharge claims under both Title VII and § 1981. R. Doc. 42. Defendant, like before, now moves to dismiss all claims under Rule 12(b)(6). R. Doc. 45.

First, Defendant maintains that Plaintiff's unilateral decision to not do assigned work followed by "egregiously violent and threatening conduct toward her supervisor" on December 30—including Plaintiff's unrefuted threat to Wentzel that she would "beat the f***ing out of the B*t*h ass and I will be going to jail tonight"—constitutes a nondiscriminatory reason for Defendant's conduct and Plaintiff's later termination. R. Doc. 45-1 at pp. 5-7. Defendant further asserts that the hostile work environment claims fail because allegations that Shelton received an "unreasonable workload" twice is not severe and pervasive conduct necessary to state hostile work environment claims. *Id.* at pp. 8-10. Plaintiff's retaliation claim also allegedly fails because the

FAC purportedly does not suggest any protected activity given (1) her grievances do not mention any race-based conduct or discriminatory practice, (2) the decision to terminate was made before Defendant received any race-based complaints, if they do sufficiently allege a race-based character at all, and (3) the termination decision was not discriminatory because it was made due to her violent and threatening conduct. *Id.* at pp. 13-14. Defendant next argues that the discrimination claim should be dismissed because the Plaintiff does not present a similarly situated coworker. Unlike Plaintiff, Defendants claim, her alleged comparator spoke to her supervisor regarding her workload and behaved calmly—rather than refuse to perform her assigned duties, curse, shout, and threaten violence. *Id.* at pp. 17-22. As for the constructive discharge claim, Defendant maintains they fail because Plaintiff did not resign but was terminated. *Id.* at pp. 22-24.

Plaintiff's response opposes on multiple grounds. R. Doc. 53. For hostile work environment, Plaintiff alleges she does not need to make a *prima facie* case of discrimination at this stage. *Id.* at pp. 3-6. Rather, Plaintiff asserts that she has met her burden based on allegations that Plaintiff was subjected to a substantially larger workload than her non-African American peers. She submits this is indicative of a workplace "permeated with discriminatory intimidation." *Id.* at pp. 3-4. Next, Plaintiff claims that her retaliation claims survive because she alleges a plausible nexus to her multiple complaints of racial discrimination—specifically to Director Ramos, Vice President of Operations Mike McKendall, and the January 4, 2023 HR meeting—and the alleged adverse employment action, her termination. *Id.* at pp. 6-9. On discrimination, Plaintiff claims that Defendant's application of disciplinary procedures, purported pretextual termination on insubordination grounds, failure to investigate complaints of discrimination, and

unequal treatment by Wentzel are sufficient at this stage. *Id.* at pp. 10-12. Although it is unclear, Plaintiff alleges her constructive discharge was pled in the alternative but regardless should independently survive dismissal because Plaintiff's "not doing!" messages was an attempt to resign. *Id.* at pp. at 13-14.

In reply, Defendant takes issue with Plaintiff's alleged need for discovery and notes that such requests are inappropriate for a motion to dismiss. R. Doc. 58 at pp. 1-2. Defendant additionally asserts that Plaintiff fails to rebut eyewitness statements about her behavior during the December 30 Incident. *Id.* at pp. 3-4.

## LAW & ANALYSIS

### 1. Legal Standard

Rule 12(b)(6) allows a defendant to seek dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility is not akin to probability, but instead, it asks for more than a sheer possibility that a defendant has acted unlawfully." *Vardeman v. City of Houston*, 55 F.4th 1045, 1050 (5th Cir. 2022) (quoting *Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. Factual plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (internal citations omitted). While a

complaint "does not need detailed factual allegations, [it] must prove the plaintiff's grounds for entitlement to relief—including factual allegations in a complaint that when assumed to be true raise a right to relief above the speculative level." *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021). A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

## 2. <u>Hostile Work Environment</u>

"To state a hostile work environment claim under Title VII, the plaintiff must show that: (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). Hostile work environment claims under § 1981 use the same elements. *See Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 400 (5th Cir. 2021) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). For element 4—to affect a term, condition, or privilege of employment—the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey*, 286 F.3d at 268 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993)). The complained-of behavior "must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). A court evaluates the conduct under the "totality of the circumstances" by considering "the

6

frequency of (1) the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id.* (citing *Harris,* 510 U.S. at 23).

The "Severe and Pervasive" requirement is disjunctive. *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007). The required showing of severity varies inversely with the pervasiveness of the conduct. *Lauderdale*, 512 F.3d at 163. But "isolated incidents (unless extremely serious)" cannot support a hostile work environment claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). A hostile work environment "necessarily rests on an allegation that an employer has created a working environment heavily charged with…discrimination." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). Violations occur when a workplace is "permeated with discriminatory behavior." *Harris*, 510 U.S. at 21. Even though a plaintiff does not need to make a prime facie case of discrimination, she must allege sufficient facts to support each element of her Title VII claim. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019).

Even considering the allegations in the light most favorable to Plaintiff, two isolated incidents of "increased workloads" lack the severity and pervasiveness necessary to support hostile work environment claims. On pervasiveness, Plaintiff only alleges she had an "unreasonable workload" twice. *See* R. Doc. 42 at ¶¶ 20-26. At best these are isolated incidents. Two incidents are considered isolated events and require allegations of egregious conduct. *See, e.g.*, *West v. City of Houston, Texas*, 960 F.3d 736, 742 (5th Cir. 2020) (characterizing complained of actions that occurred "twice" as "isolated" and "infrequent" needing allegations of egregious conduct);

*Jackson v. Honeywell Int'l, Inc*., 601 F. App'x 280 (5th Cir. 2015) (characterizing allegations that a coworker made offensive comments twice as "isolated" and holding that such allegations did not affect the terms and conditions of his employment because the conduct was not egregious). On severity, the increased workload alleged here does not amount to egregious conduct. Plaintiff does not allege the conduct was physically threatening, humiliating, or offensive.

Further, courts have also previously recognized that additional workload requirements, like working more hours on occasion, does not amount to severe and pervasive harassment. *See, e.g.*, *McIntyre v. Ben E. Keith Co*., No. 4:16-CV-1134-A, 2017 WL 4653447, at *3 (N.D. Tex. Oct. 13, 2017) (allegations an employee was required to work more hours and meet higher performance standards than coworkers did not sustain a hostile work environment claim); *Green v. Trimac Transportation S., Inc*., No. 1:10-CV-444, 2012 WL 12893293, at *14 (E.D. Tex. Sept. 12, 2012), *aff'd sub nom. Green v. Trimac Transp., Inc*., 546 F. App'x 333 (5th Cir. 2013) (dismissing a hostile work environment claim predicated on allegations that a plaintiff had additional duties and exceeded allowable hours of service); *see also Watkins v. Tex. Dep't of Crim. Justice,* 269 Fed.Appx. 457, 464 (5th Cir. 2008) (rejecting a plaintiff's attempt to support a hostile work environment claim based on allegations that because an event happened to African American employees it must be discriminatory). "[T]emporary changes to schedule and duty assignments…do not support a hostile work environment claim." *Morris v. Pellerin Milnor Corp*., No. CV 16-15905, 2018 WL 1726257, at *11 (E.D. La. Apr. 10, 2018) (citing *Hiner v. McHugh*, 546 Fed.Appx. 401, 407 (5th Cir. 2013); *Ellis v. Principi*, 246 Fed.Appx. 867, 871 (5th Cir. 2007); *Bryan v. Chertoff*, 217 Fed.Appx. 289, 294 (5th Cir. 2007); *Escalante v. Holder*, No. EP-09-CV-

368-KC, 2011 WL 1528472, at *8 (W.D. Tex. Apr. 20, 2011)). That is because § 1981 or Title VII does not "impose a general civility code" or "filter out complaints attacking the ordinary tribulations of the workplace." *Burrle v. Plaquemines Par. Govt.*, CIV.A. 12–739, 2013 WL 2286113, at *4 (E.D. La. May 23, 2013).

It may be unpleasant to be asked to do more procedures than colleagues. But doing so on two days out of a months long tenure is an isolated incident. Such isolated incidents require allegations of egregious conduct. Merely being asked to perform more procedures than others falls short of this standard. Accordingly, Plaintiff has not sufficiently pled hostile work environment claims.

### 3. <u>Retaliation</u>

"Title VII prohibits an employer from taking adverse employment action against an employee because he engages in a protected activity." *Joseph v. Phillips*, 2014 WL 5429455 at *3 (E.D. La. Oct. 24, 2014). "Section 1981 mirrors the requirements of Title VII in this context." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). To state a claim for retaliation the plaintiff must allege facts that tend to establish: "(1) that she engaged in activity protected by Title VII, (2) that adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002). Defendant only challenges elements one and three. R. Doc. 45 at pp. 13-17.

On element one, Defendant argues Plaintiff has not engaged in any protected activity. Her December 4, 2022 communications with Wentzel, are allegedly not protected because Defendant submits that the FAC fails to contain allegations that such communications notified EJGH of a

9

discriminatory practice. *Id.* at p. 13-14. Plaintiff maintains that her complaints of racially discriminatory conduct to Manager Ramos, Vice President of Operations Mike McKendall, and during the January 4, 2023 termination meeting are sufficient. R. Doc. 53 at p. 7.

An employee has engaged in a protected activity under Title VII if she (1) "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" (the "participation clause") or (2) "opposed any practice made an unlawful employment practice by this subchapter" (the "opposition clause"). *Carpenter*, 2021 WL 1198261 at * 4 (citing 42 U.S.C § 2000e-3(a))). The Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011). An employee "cannot simply complain that she received unfair or undesirable treatment." *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (citing *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007)). The employee must refer to conduct that could plausibly be considered discriminatory in intent or effect, thus alerting the employer of its alleged discriminatory practice. *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 326–27 (5th Cir. 2017) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007). In this case, Plaintiff attempts to show the latter, that she opposed the alleged discriminatory workload allocation.

The Court however finds no alleged facts demonstrating a protected activity in the FAC. Although Plaintiff claims that she reported "racial discrimination" in emails and other communications attached to the FAC (the "grievances"), close examination shows that she did not

10

complain about a discrete, discriminatory practice or conduct that could be viewed as race-based. Plaintiff's first purported complaint, to Wentzel on December 4, 2022, is not a protected activity because her objection to her work schedule does not mention or suggest a race-based component. R. Doc. 42 at ¶ 11-14. Plaintiff's grievances rather reflect garden variety workplace disputes. Indeed, her opposition and complaints, notably to Manager Ramos and Director Brock, concede that she suffered an "extreme workload due to her falling out with Charge Nurse Jill Wentzel." R. Doc. 53 at p. 14; *see also* R. Doc. 42-1 ("[Wentzel] is purposely giving me [Plaintiff] a large load because she is mad."); R. Doc. 42-3 (pages-long email to Director Brock never mentions "race" or discrimination but rather blames "favoritism toward other workers because [Wentzel] dislike[d] someone."). Even for the grievances that mention Plaintiff's race in passing, none complain about a discriminatory practice—that African American nurses were assigned more procedures because of their race.[3]

Generic complaints about a hostile work environment do not suffice. *See e.g.*, *Marlbrough v. Cornerstone Chem. Co*., No. CV 23-22, 2024 WL 1116177, at *7 (E.D. La. Mar. 14, 2024). The only racial component of the December 30 Incident was interjected by Plaintiff herself. However, a plaintiff cannot alone rely on her perception of race-based conduct to demonstrate that Defendant's conduct had racial overtones. *Dallas Indep. Sch. Dist.,* 448 Fed.Appx. at 493; *see also Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246–47 (5th Cir. 1985) (affirming dismissal for allegations of "retaliation" "because she failed to offer any evidence other than her subjective belief ... that

---

[3] The grievances are attached as exhibits in the FAC and are central to this motion to dismiss. Accordingly, they can be considered by the Court. *Sligh v. City of Conroe, Texas*, 87 F.4th 290, 297 (5th Cir. 2023).

she was terminated because of her [protected characteristic].”). District courts also routinely dismiss retaliation claims for failure to engage in protected activity based on vague complaints about interpersonal conduct and general workplace troubles. *See, e.g.*, *HavMmeri v. Methodist Health Sys. of Dallas*, No. 3:22-CV-00594-E-BT, 2023 WL 4712206, at *10 (N.D. Tex. June 16, 2023), *report and recommendation adopted*, No. 3:22-CV-00594-E-BT, 2023 WL 4707998 (N.D. Tex. July 24, 2023), *aff'd sub nom. HavMmeri v. Methodist Health Sys., Dallas*, No. 23-10880, 2024 WL 1795143 (5th Cir. Apr. 25, 2024) (dismissing retaliation claim based on emails to a supervisor which focused on grievances against a co-worker that the plaintiff later tried to impute as gender based); *Jackson v. Dallas Cnty. Juv. Prob. Dep't*, No. CIV.A. 3:06-CV-264MB, 2007 WL 2187250, at *10 (N.D. Tex. July 30, 2007), *aff'd sub nom. Jackson v. Dallas Cnty. Juv. Dep't*, 288 F. App'x 909 (5th Cir. 2008) (internal grievances that fail to detail any conduct that violates Title VII does not constitute protected activity). Because Plaintiff's grievances are not protected activities, the retaliation claims are subject to dismissal and the Court need not go further.

### 4. Race-Discrimination

To establish a *prima facie* claim for race-discrimination under Title VII, a plaintiff must show “that [she] (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees outside the protected group.” *Stroy v. Gibson on behalf of Dep't of Veterans Affs.*, 896 F.3d 693, 698 (5th Cir. 2018) (cleaned up). The analysis for race-discrimination under § 1981 is identical. *See, e.g.*, *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992

(5th Cir. 2005); *Roberson v. Alltel Info. Servs*., 373 F.3d 647, 651 (5th Cir. 2004). A plaintiff however is not required to state a prima facie case to survive a motion to dismiss. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510–12 (2002). Rather she must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make her case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016).

There is no dispute that Plaintiff satisfies the first three elements; the parties disagree on the fourth. Plaintiff claims she was subject to race discrimination when EJGH terminated her employment with a pretextual reason. Because Plaintiff has not alleged any facts that directly indicate that she was terminated on the basis of race, she must identify at least one "similarly situated" coworker outside her protected class who was treated more favorably "under nearly identical circumstances." *See Alkhawaldeh v. Dow Chem. Co*., 851 F.3d 422, 426 (5th Cir. 2017) (quoting *Lee v. Kan. City S. Ry. Co*., 574 F.3d 253, 259 (5th Cir. 2009)). The similarly situated coworker must have "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and ha[d] essentially comparable violation histories." *See Lee*, 574 F.3d at 260.

Plaintiff's alleged similarly situated coworker is Lavonne Alonzo, a Caucasian nurse. *See, e.g.,* R. Doc. 42 at ¶ 115. Plaintiff claims the two are similarly situated because when Alonzo lodged a complaint about her unreasonable workload, Defendant accommodated her request. *Id.* This is purportedly different from the treatment Plaintiff received as she contends that Alonzo was not escorted off the premises nor was she subsequently terminated. *Id.* Defendant however argues that Alonzo is not a similarly situated employee. R. Doc. 45 at pp. 18-20. Defendant maintains that

Plaintiff's allegations admit that Alonzo reported her concerns to her supervisor instead of unilaterally refusing to do the assigned work with the "not doing!" messages, shout, curse, or threaten violence. *Id.* at p. 18. EJGH also contends that Plaintiff's allegations of a race-basis are merely conclusory because employee misconduct, threats of violence, and insubordination are legitimate, nondiscriminatory reasons for termination. R. Doc. 45 at pp. 20-21.

The Court finds Plaintiff pleads just enough facts to state a race-discrimination claim. She alleges that Defendant's discriminatory practices consist of assigning African American nurses a higher percentage of the workload without assistance when compared to Caucasian nurses. R. Doc. 45 at p. 10-11. This is supported by specific allegations that Plaintiff and other African American nurses were assigned 78% and 71% of the procedures despite making up half of the workforce. R. Doc. 42 at ¶¶ 21, 25. She also alleges that unlike Alonzo, when she complained about an unreasonable workload, she was escorted off the premises and was later terminated. *Id.* at ¶ 34. Despite Defendant's suggestion the two are not similarly situated, the Court is required to view the allegations in the light most favorable to Plaintiff. The allegations meet the substantial similarity requirement at this juncture because Plaintiff alleges both EJGH nurses made the same complaints to Wentzel about an unreasonable workload. *Id.* Although Defendant asserts Alonzo filed her complaint before unilaterally refusing to work, Plaintiff's allegations do not concede this. Rather Alonzo's statements in the FAC claim only that their situations are different because she never had security called on her when she complained. R. Doc. 42-5. This is a difference in Defendant's response to the conduct not a difference in the conduct itself. Of course, unilaterally refusing to work, threatening violence, and insubordination are legitimate reasons for termination.

Plaintiff must also later show that Alonzo is a similarly situated employee with a near identical violation history. But for now, the Court finds Plaintiff has alleged a race-based explanation for differences in work assignment and response to her complaints of an unreasonable workload.

### 5. **Constructive Discharge**

An employee who voluntarily resigns from their position may bring a racial discrimination claim against their employer under the theory of constructive discharge. *See Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). However, an employee must also "show that [s]he *actually resigned*." *Green v. Brennan*, 578 U.S. 547, 555, 136 S. Ct. 1769, 1777, 195 L. Ed. 2d 44 (2016) (citing *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004) (emphasis added); *see also Newbury v. City of Windcrest*, 991 F.3d 672, 677 (5th Cir. 2021). Furthermore, "the plaintiff must show a greater degree of harassment than is required for a hostile work environment claim." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 330 (5th Cir. 2004).

Plaintiff's constructive discharge claims are patently unsupportable because Plaintiff alleges that she was terminated, she did not resign. Plaintiff's attempt to re-classify the "not doing!" messages as a resignation attempt is contradicted by her own allegations. The FAC repeatedly characterizes Plaintiff's dismissal as a "termination." *See, e.g.*, R. Doc. 42 at ¶¶ 51-53, 55, 92-96, 131-135, 170-174, 211-214, 252-256, 262-263. Plaintiff also alleges she continued to work on other assignments *after* she wrote the "not doing!" messages. *Id.* at ¶¶ 36, 38. She additionally made a request to a supervisor to return to work the next day—after she was placed on investigative leave. *Id.* at ¶ 47. There is thus no indication Plaintiff resigned let alone a plausible set of facts to support such a claim. Also, because Plaintiff does not state a hostile work

environment claim, there is no constructive discharge claim. Therefore these claims must be dismissed. Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss, R. Doc. 45, is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiff's hostile work environment, retaliation, and constructive discharge claims be **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's race-discrimination claims is **DENIED.**

New Orleans, Louisiana, this 14th day of March 2025.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE